HARMON & SEIDMAN LLC
Christopher Seidman (SBN: 98884)
101 S Third Street, Suite 265
Grand Junction, CO 81501
Tel:  (970) 245-9075
Fax:  (970) 245-8086
Email:  chris@harmonseidman.com

Alex Rice Kerr (SBN: 264821)
219 Vicksburg Street
San Francisco, CA 94114
Tel: (415) 230-4760
Email:  alex@harmonseidman.com

*Attorneys for Plaintiff* Minden Pictures, Inc.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Minden Pictures, Inc. | Case No. CV 10-03212 SI |
| Plaintiff, | PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| Houghton Mifflin Harcourt Publishing Company and R.R. Donnelley & Sons Company, | |
| Defendants. | Date:  November 4, 2010 Time:  9:00 a.m. Place:  Courtroom 10 Judge:  Honorable Susan Illston |

1

## TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................................5

RELIEF SOUGHT.....................................................................................................5

INTRODUCTION .......................................................................................................5

FACTS ........................................................................................................................6

STANDARD.................................................................................................................9

ARGUMENT................................................................................................................9

I.      PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS FOR
        COPYRIGHT INFRINGEMENT ...................................................................10

II.     PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF ...11

        A.      Minden, against its will, is being forced to "grant" licenses to HMH, having
                been stripped by HMH of the ability to control its copyrighted works ...........11

        B.      An injunction is needed to protect Minden from HMH's unceasing criminal
                copyright infringements ....................................................................13

III.    THE BALANCE OF HARDSHIPS TO THE PARTIES FAVORS AN EQUITABLE
        REMEDY .....................................................................................................14

IV.     THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY INJUNCTION ...15

V.      NO BOND IS REQUIRED .........................................................................16

CONCLUSION............................................................................................16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Am. Fed'n & Mun. Emples., Local 3190 v. Maricopa County Bd.,*
    2007 U.S. Dist. LEXIS 18356 (D. Ariz. Mar. 13, 2007) ................................................................... 16

*Am. Trucking Ass'ns v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ...................................................................................................... 9

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3rd Cir.1983) ..................................................................................................... 15

*Apple Inc. v. Psystar Corp.,*
    673 F.Supp.2d 943 (N.D. Cal. 2009) ......................................................................................... 15

*Chalfant v. Tubb,*
    453 F. Supp. 2d 1308 (N.D. Okla. 2006) ................................................................................... 10

*Conn. General Life Ins. Co. v. New Images of Beverly Hills,*
    321 F.3d 878 (9th Cir. 2003) ...................................................................................................... 16

*Designer Skin, LLC v. S & L Vitamins, Inc.*
    No. CV05-3699-PHX-JAT, 2008 WL 4174882 (D. Ariz. Sept. 5, 2008) .......................... 11, 15

*Doctor's Assocs., Inc. v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) ....................................................................................................... 16

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .............................................................................................................. 11, 12

*Feist Publications, Inc., v. Rural Telephone Service Co., Inc.,*
    499 U.S. 340 (1991) .................................................................................................................... 10

*In re Microsoft Corp. Antitrust Litig.,*
    333 F.3d 517, 534-35 (4th Cir. 2003) ........................................................................................ 10

*Marshal v. New Kids On The Block P'ship,*
    780 F. Supp. 1005 (S.D.N.Y. 1991) ........................................................................................... 10

*MDY Indus. LLC v. Blizzard Entm't, Inc.,*
    616 F. Supp. 2d 958 (D. Ariz. 2009) .......................................................................................... 15

*Microsoft Corp. v. Marturano,*
    No. 1:06cv1747 OWW GSA, 2009 WL 1530040 (E.D. Cal. May 27, 2009) ...................... 12, 15

*Momento, Inc. v. Seccion Amarilla USA,*
    No. C 09-1223 SBA, 2009 WL 1974798 (N.D. Cal. July 8, 2009) ............................................ 14

*Mortgage Market Guide, LLC v. Freedman Report, LLC,*
    2008 WL 2991570 (D.N.J.2008) ................................................................................................ 15

*Nelson-Salabes, Inc., v. Morningside Development, LLC,*
    284 F.3d 505 (4th Cir. 2002) ...................................................................................................... 10

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) .................................................................................. 10

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) .................................................................................... 10

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  188 F.3d 1115, 1119 (9th Cir.1999). ........................................................................ 9

*Wood v. Houghton Mifflin Harcourt Publishing Company, et al.*,
  F.Supp.2d 1230 (D. Colo. 2008) ................................................................. 10, 11, 14

**STATUTES**

17 U.S.C. § 106 ........................................................................................... 5, 6, 10, 12
17 U.S.C. § 502 ................................................................................................. 5, 9, 16
17 U.S.C. § 506 ................................................................................................. 9, 13, 15
18 U.S.C. § 2319 ...................................................................................................... 13

**TREATISE**

David Nimmer, *Nimmer on Copyright* ............................................................. 10, 12

---

PLAINTIFF'S NOTICE, MOTION AND MEMO FOR PRELIMINARY INJUNCTION          CV 10-03212 SI

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 4th, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan Illston, in the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff will move the Court for a preliminary injunction.

## RELIEF SOUGHT

Pursuant to Section 502(a) of Title 17 of the Copyright Act, Plaintiff Minden Pictures, Inc. ("Minden") hereby moves the Court to issue a preliminary injunction to prevent copyright infringements by Defendant Houghton Mifflin Harcourt Publishing Company ("HMH"). Specifically, Plaintiff requests a preliminary injunction against Defendant and anyone working in concert with it from future unauthorized copying, selling, or distributing Plaintiff's photographs described in the Complaint ("Photographs") and all other photographs whose copyrights Plaintiff owns. This request does not seek to retrieve from schools already distributed infringing publications; Minden modestly moves to enjoin HMH from *future* copying, selling, and distributing products containing unauthorized copies of Minden's copyrighted works.

## INTRODUCTION

A preliminary injunction is warranted because HMH flatly refuses to stop infringing the works of Minden and many other photographers. For years after being repeatedly sued for its infringing practices, HMH continues to systematically overprint license limits for its financial gain. More than 35 copyright infringement suits have been brought against it since 2005, all for violating license limits as alleged here, yet HMH still has not established a method for monitoring its uses of licensed photographs so that it can ensure compliance with license limits.[1]

HMH takes the position that if its infringements are discovered, it need only pay damages. This remedy, however, imposes untenable and unrecoverable costs on Minden to continuously monitor and sue HMH,[2] denies a copyright holder the fundamental, statutory right to control its creative work,[3] and compels Minden to accept the role of continuing victim of criminal copyright infringement.[4]

---

[1] *See* Exhibit C, Declaration of Alex Rice Kerr ("Kerr Decl.").
[2] Exhibit A, Declaration of Richard L. Minden ("Minden Decl.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FACTS

Minden Pictures, Inc. is a stock photography agency located in Watsonville, California.  HMH is the largest U.S. textbook publisher, located in Boston, Massachusetts.  Between 1996 and 2009, HMH requested, and Minden sold, limited licenses authorizing HMH to copy and print photographic images in HMH's educational publications.  Minden expressly defined the number of permissible copies, image size, distribution area and/or duration for each publication, and was paid accordingly.[5]

HMH habitually disregarded the license limits without notice or compensation to Minden.  HMH has admitted that it caused numerous textbooks referenced in Plaintiff's Complaint to be printed in excess of quantities specified in the licenses:[6]

1. "HMH admits that it caused to be printed more than 100,000 copies of *Biology: Principles & Exploration* © 1998 containing the images described in rows 2 to 3 of Exhibit 1A to the Complaint."[7]  Plaintiff's license was limited to a print run "under 100,000."[8]

2. "HMH admits that it caused to be printed more than 60,000 copies of *World Geography Today* © 2000 containing the images described in rows 40 to 41 of Exhibit 1A to the Complaint."[9]  Plaintiff's license was limited to a print run of 60,000.[10]

3. HMH responded "Admitted" when asked to "[a]dmit that you caused to be printed more than 40,000 copies of *Harcourt Science Grade K* © 2000 containing the image described in row 79 of Exhibit 1A to the Complaint."[11]  Plaintiff's license was limited to a print run of under 40,000.[12]

4. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 1* © 2000 containing the images described in rows 48 to 50 of

---

[3] *See* 17 U.S.C. § 106(a) (copyright owner has the exclusive right to copy and to authorize copying of the work); 17 U.S.C. § 501(a) ("anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 . . . is an infringer of the copyright . . .").
[4] *See* 17 U.S.C. § 506(a)(1) ("Any person who willfully infringes a copyright shall be punished [for criminal infringement under section 18 U.S.C. § 2319], if the infringement was committed-- (A) for purposes of commercial advantage or private financial gain..."
[5] *See* Exhibit A, Minden Decl.
[6] Exhibit B to Motion, HMH Sept. 28, 2010, Responses to Plaintiffs' Requests for Admissions in *Minden Pictures, Inc. v. Houghton Mifflin Harcourt Publishing Co., et al.*, Case No. CV 10-03212 SI.
[7] Exhibit B, request no. 1.
[8] Exhibit A, Minden Decl., and Exhibit 1 thereto, Invoice No. 160007.
[9] Exhibit B, request no. 3.
[10] Exhibit A, Minden Decl., and Exhibit 2 thereto, Invoice No. 190042 and accompanying request letter.
[11] Exhibit B, request no. 5.
[12] Exhibit A, Minden Decl., and Exhibit 3 thereto, Invoice No. 190675.

6

Exhibit 1A to the Complaint."[13]  Plaintiff's license was limited to a print run of 100,000."[14]

5. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 2* © 2000 containing the images described in rows 52 and 53 to 55 of Exhibit 1A to the Complaint."[15]  Plaintiff's license was limited to a print run: under of 100,000.[16]

6. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 3* © 2000 containing the images described in rows 58 to 61 of Exhibit 1A to the Complaint."[17]  Plaintiff's license was limited to a print run of 100,000.[18]

7. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 4* © 2000 containing the images described in rows 82 to 83 of Exhibit 1A to the Complaint."[19]  Plaintiff's license was limited to a print run of under 100,000.[20]

8. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 5* © 2000 containing the images described in rows 71 and 75 to 78 of Exhibit 1A to the Complaint."[21]  Plaintiff's license was limited to a print run: of 100,000.[22]

9. "HMH admits that it caused to be printed more than 100,000 copies of *Harcourt Science Grade 6* © 2000 containing the images described in rows 63 to 70 of Exhibit 1A to the Complaint."[23]  Plaintiff's license was limited to a print run of 100,000."[24]

10. HMH responded "Admitted" when asked to "[a]dmit that you caused to be printed more than 40,000 copies of *Algebra 1* by Larson containing the image described in row 103 of Exhibit 1A to the Complaint."[25]  Plaintiff's license was limited to a print run of under 40,000.[26]

11. "HMH admits that it caused to be printed more than 100,000 copies of *Holt, Rinehart & Winston Earth Science National Edition* © 2001 containing the image described in row 134 of Exhibit 1A to the Complaint."[27]  Plaintiff's license was limited to a print run of under 100,000.[28]

---

[13] Exhibit B, request no. 6.
[14] Exhibit A, Minden Decl., and Exhibit 4 thereto, Invoice No. 190670.
[15] Exhibit B, request no. 7.
[16] Exhibit A, Minden Decl., and Exhibit 5 thereto, Invoice No. 190671.
[17] Exhibit B, request no. 8.
[18] Exhibit A, Minden Decl., and Exhibit 6 thereto, Invoice No. 190672.
[19] Exhibit B, request no. 9.
[20] Exhibit A, Minden Decl., and Exhibit 7 thereto, Invoice No. 190677.
[21] Exhibit B, request no. 10.
[22] Exhibit A, Minden Decl., and Exhibit 8 thereto, Invoice No. 190674.
[23] Exhibit B, request no. 11.
[24] Exhibit A, Minden Decl., and Exhibit 9 thereto, Invoice No. 190673.
[25] Exhibit B, request no. 12.
[26] Exhibit A, Minden Decl., and Exhibit 10 thereto, Invoice No. 191278.
[27] Exhibit B, request no. 14.
[28] Exhibit A, Minden Decl., and Exhibit 11 thereto, Invoice Nos. 200334, 191477 and accompanying request letters.

12. "HMH admits that it caused to be printed more than 100,000 copies of *Holt, Rinehart & Winston Life Science National Edition* © 2001 containing the image described in row 135 of Exhibit 1A to the Complaint."[29]  Plaintiff's license was limited to a print run of under 100,000.[30]

13. "HMH admits that it caused to be printed more than 250,000 copies of *Reading Grade 1* © 2001 containing the image described in row 200 of Exhibit 1A to the Complaint."[31]  Plaintiff's license was limited to student edition print run of 250,000.[32]

14. "HMH admits that it caused to be printed more than 40,000 copies of *People, Places and Change* © 2001 containing the images described in rows 245 to 246 of Exhibit 1A to the Complaint."[33]  Plaintiff's license was limited to a print run of "under 40,000."[34]

15. "HMH admits that it caused to be printed more than 100,000 copies of *World Geography Today* © 2003 containing the images described in rows 406 and 409 to 417 of Exhibit 1B to the Complaint."[35]  Plaintiff's license was limited to a print run of under 100,000.[36]

16. HMH responded "Admitted" when asked to "[a]dmit that you caused to be printed more than 25,000 copies of *Holt: Elements of Literature Grade 9* containing the image described in row 426 of Exhibit 1B to the Complaint."[37] Plaintiff's license was limited to print run of 25,000.[38]

17. "HMH admits that it caused to be printed more than 250,000 copies of *Houghton Mifflin MATH Grade 4* © 2005 containing the images described in rows 640 to 643 of Exhibit 1C to the Complaint."[39]  Plaintiff's license was limited to a student edition print run of 250,000.[40]

18. "HMH admits that it caused to be printed more than 100,000 copies of *Holt Science & Technology: Life Science National Edition* © 2005-2010 containing the images described in rows 731, 734, 737 to 741, 744 to 746 and 750 of Exhibit 1C to the Complaint."[41] Plaintiff's license was limited to a "total print run of under 100,000."[42]

---

[29] Exhibit B, request no. 15.
[30] Exhibit A, Minden Decl., and Exhibit 11 thereto, Invoice Nos. 200334, 191477 and accompanying request letters.
[31] Exhibit B, request no. 16.
[32] Exhibit A, Minden Decl., and Exhibit 12 thereto, Invoice No. 200728 and accompanying request letter.
[33] Exhibit B, request no. 17.
[34] Exhibit A, Minden Decl., and Exhibit 13 thereto, Invoice No. 201085.
[35] Exhibit B, request no. 20.
[36] Exhibit A, Minden Decl., and Exhibit 14 thereto, Invoice No. 203405 and accompanying request letter.
[37] Exhibit B, request no. 21.
[38] Exhibit A, Minden Decl., and Exhibit 15 thereto, Invoice No. 204179.
[39] Exhibit B, request no. 24.
[40] Exhibit A, Minden Decl., and Exhibit 16 thereto, Invoice No. 206394 and accompanying request letter.
[41] Exhibit B, request no. 25.
[42] Exhibit A, Minden Decl., and Exhibit 17 thereto, Invoice No. 207047 and accompanying request

8

HMH admitted to overrunning Minden's licenses in these eighteen publications.  Because discovery has just commenced, this selection represents just a few of the hundreds of titles included in Plaintiff's claims.  They are offered as examples so that this motion could be expeditiously filed and considered by the Court.

STANDARD

In the Ninth Circuit, to obtain a preliminary injunction, a plaintiff is required to show "either (1) a likelihood of success on the merits and the possibility of irreparable injury, OR (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in its favor.  These two alternatives represent 'extremes of a single continuum,' rather than two separate tests.  The greater the relative hardship to the moving party, the less probability of success must be shown."[43]  Here, Minden can show a high likelihood of success on the merits, which requires a lower showing of potential harm.

ARGUMENT

Section 502(a) of Title 17 of the Copyright Act specifically provides for injunctive relief in circumstances of continuing infringements:  "Any court having jurisdiction of a civil action arising under this title may…grant…temporary injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[44]  To be granted a preliminary injunction, a party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[45]  Minden meets  each element and is entitled to a preliminary injunction, preventing HMH from continuing to infringe Minden's copyrights.  Minden merely asks the Court to order what HMH refuses to do voluntarily–abide by the copyright laws of the United States, including 17 U.S.C. § 506, which makes willful copyright infringement for commercial gain a felony crime under the circumstances of this case.

letter.
[43] *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.1999).
[44] 17 U.S.C. § 502(a).
[45] *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008)).

I.    **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS FOR COPYRIGHT INFRINGEMENT.**

To establish copyright infringement, a plaintiff must show only (1) ownership of a valid copyright and (2) the infringer's unauthorized copying of protected elements of the copyrighted material.[46]  Minden has submitted evidence that it owns the copyrights to the photographs it licensed to HMH.[47]  Minden has also presented evidence that it licensed the right to copy its images in limited amounts.[48]  Finally, Minden has presented evidence HMH exceeded the licensed limits by printing more than the specified amounts of these publications.[49]

Where a defendant has no license or permission to copy a copyrighted work, any copying constitutes unauthorized copying under the Copyright Act.[50]  Additionally, even if a defendant has been granted a license to copy, any copying in excess of a license's limitations constitutes unauthorized copying under the Copyright Act.  "A copyright holder may grant a limited license for use of copyrighted material, and if the scope of the license is exceeded, the owner of the copyright may sue for infringement."[51]  "[A] copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."[52]

Under virtually identical facts, in *Wood v. Houghton Mifflin Harcourt et al*, Judge Ebel on summary judgment held that HMH committed copyright infringement by printing more than 200,000

---

[46] *See Feist Publications, Inc., v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991); *Nelson-Salabes, Inc., v. Morningside Development, LLC,* 284 F.3d 505, 513 (4th Cir. 2002); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

[47] *See* Exhibit A.

[48] *Id.*

[49] *See* Exhibit B.

[50] *See* 17 U.S.C. § 106(a) (copyright owner has the exclusive right to copy and to authorize copying of the work); 17 U.S.C. § 501(a) ("anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 . . . is an infringer of the copyright . . .").

[51] *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1317 (N.D. Okla. 2006) (*citing LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 534-35 (4th Cir. 2003)); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-88 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license. The critical question is not the existence but the scope of the license."; 3-10 Nimmer on Copyright § 10.15[A] ("[W]hen a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes an infringement.").

[52] *Marshal v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991).

copies of textbooks (actually 1,382,264 copies) when plaintiff's licenses were limited to 40,000 copies.[53]  The court stated:

> Wood has also produced probative evidence that HMH exceeded the scope of the licenses issued for LOL 7, 2001 and 2002, SSRM 5, 2001, and SSRM 7, 2002.  In its responses to Wood's request for admissions, HMH admitted that it had published "200,000 or more copies" of both the 2001 and 2002 editions of LOL 7. (Id., Ex. 5, at15 (response to request #38), 19 (response to request #50).)  Wood further cites to HMH's inventory purchase records (id., Exs. 3, 4) as evidence that HMH published a total of 1,382,264 copies of LOL 7, 2001 and 2002; 204,395 copies of SSRM 5, 2001; and 103,795 copies of SSRM 7, 2002 (Dkt. #97 at 3).  Therefore, for these four publications, Wood has met his burden of establishing that HMH exceeded the scope of its license and thus violated his copyright.[54]

Like it did in the *Wood* case, here HMH infringed Minden's copyrights by exceeding the print limits in the licenses.  Plaintiff has shown a high likelihood of success on the merits of its copyright infringement claims against HMH, meeting the first requirement for a preliminary injunction.

## II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.

### A.  Minden, against its will, is being forced to "grant" licenses to HMH, having been stripped by HMH of the ability to control its copyrighted works.

The Supreme Court in *eBay Inc. v. MercExchange, L.L.C.* recently advised courts not to apply a presumption that plaintiffs have suffered irreparable harm because they have shown infringement.[55]  However, the Court also cautioned against the other extreme, presuming a plaintiff has <u>not</u> suffered irreparable harm and can be compensated by money damages simply because he has licensed the work in suit.[56]  A recent, post-*eBay* case in this circuit, *Designer Skin, LLC v. S & L Vitamins, Inc.*,[57] found the plaintiff showed irreparable harm where (1) the defendant infringer copied and used photographs without permission and (2) there was a threat of future infringements.  The court held, "[f]ailing to issue an injunction under the circumstances of this case would be tantamount to forcing [the plaintiff]

---

[53] 589 F. Supp. 2d 1230 at 1238-42 (D. Colo.  2008).
[54] *Id.*
[55] 547 U.S. 388, 391 (2006).
[56] *Id.* at 393-94 (criticizing district court's categorical rule that the plaintiff who had been willing to license its patents "would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue"; but also criticizing appeals courts "general rule . . . that a permanent injunction will issue once infringement and validity have been adjudged.").
[57] No. CV05-3699-PHX-JAT, 2008 WL 4174882 *4-5 (D. Ariz. Sept. 5, 2008).

11

to license its copyrighted images . . . thus rendering its right to exclude others from using its images illusory.  [The plaintiff] has established irreparable harm."[58]

Similarly here, HMH has shown clear evidence of past infringement and a threat of future infringements.  In parallel litigation and as will be shown in these proceedings, HMH has used photographs belonging to others without permission for years and, if allowed, will continue to do so despite the litigation history of this case and dozens more brought against HMH for the same infringing conduct.

Continued infringement of Minden's photographs precludes it from controlling the use of its copyrighted works, contrary to a basic principle of copyright law set forth in 17 U.S.C. § 106.  HMH's contention that it should be able to continue to infringe now, and in the future, and simply pay Minden in the end, improperly creates a mandatory licensing scheme contrary to the Copyright Act.  Chief Justice Roberts in his concurring opinion in *eBay* alluded to this point, commenting that the "long tradition" of courts granting injunctive relief upon a finding of infringement in the vast majority of patent cases "is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes—a difficulty that often implicates the first two factors of the traditional four-factor test."[59]

A district court in this circuit recently discussed when injunctive relief is called for in a copyright infringement case:  When "there is continued threat that [the] Defendant will continue to engage in this unlawful conduct [the] Plaintiff's injury cannot be remedied by monetary compensation alone.  As such, an injunction is the only remedy available to limit the potential of future injury."[60]

Without an injunction, Minden will suffer irreparable harm because legal remedies are insufficient to compensate him for HMH's future infringements of its work.  Minden is in the business

[58] *Id*.  The Court also discussed "the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm", stating, "it seems clear to this Court that such a rule would not run afoul of *eBay*'s directives" without expressly adopting such a rule.  If that rule is applied in this case, Minden has presented evidence to meet both elements.
[59] 547 U.S at 395.  Although Justice Roberts commented on patent cases, the reasoning also applies to copyright law.  *See* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* vol. 4 §14.06[B][1][c] (noting that patents and copyrights share a similar right to exclude others from use).
[60] *Microsoft Corp. v. Marturano*, No. 1:06cv1747 OWW GSA, 2009 WL 1530040, *8 (E.D. Cal. May 27, 2009).

of licensing photographs, not investigating and suing HMH for copyright infringement. Potential future damage awards for HMH's infringements do not make up for the disruption of Minden's business.   And unreimbursed attorneys' fees and costs make the "continuous litigation" model a money-losing proposition for Minden.

### B.   An injunction is needed to protect Minden from HMH's unceasing criminal copyright infringements.

HMH's continued practice of willful infringement constitutes criminal copyright infringement within the meaning of 17 U.S.C. § 506, at the felony level.  Despite knowledge of its wrongful and wide-spread use of Minden's copyrighted works without permission, HMH refuses to stop infringing. Section 506 of title 17 provides in relevant part:

(a) CRIMINAL INFRINGEMENT--

(1) IN GENERAL.--Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed--

(A) for purposes of commercial advantage or private financial gain…

Section 2319 of title 18 sets out the penalties for criminal infringement of a copyright:

(a) Any person who violates section 506(a) (relating to criminal offenses) of title 17 shall be punished as provided in subsections (b), (c), and (d) and such penalties shall be in addition to any other provisions of title 17 or any other law.

(b) Any person who commits an offense under section 506(a)(1)(A) of title 17--

(1) shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2,500;

Can it be seriously argued that the ongoing victimization by a felony crime does not constitute irreparable harm?  Must Minden watch the continued infringement of his intellectual property as Defendant drags out the litigation process, arguing all can be made well by money damages?  Minden seeks injunctive relief to regain control of its copyrighted works and asks that the Court make HMH stop its illegal infringing practices now.

**III.    THE BALANCE OF HARDSHIPS TO THE PARTIES FAVORS AN EQUITABLE REMEDY.**

An injunction prohibiting future copyright infringement would not create an untenable hardship for Defendant.  HMH has frequently asserted in parallel cases that the images in its textbooks are fungible and can easily be replaced without pedagogical impact.  For example, in *Wood*, involving similar textbooks at issue here, HMH argued, "the images are fungible elements that are not essential to what is actually being sold – a language arts curriculum."[61]  HMH also noted it could easily remove and replace particular images from its products: "when plaintiff refused to grant HMH permission to re-use his images in a new edition of the Summer Success reading programs, those images were quickly replaced, and the programs remained on the market."[62]  If HMH desires to continue selling the textbooks in which Minden's images appear, HMH can simply substitute properly licensed photographs for the infringing ones.

The facts here are similar to another case in this district, *Momento, Inc. v. Seccion Amarilla USA,*[63] in which the defendant copied and printed the plaintiff's Spanish-language advertisements for use in its Spanish-language telephone directories.  The court required retrieval of all of the defendant's infringing directories from distribution points and enjoined the distribution of infringing directories, noting,

> [the defendant] SAUSA had notice of Momento's infringement contentions as of the November 2009 cease and desist letter, before it printed the most current issue of the Oakland directory. Yet SAUSA proceeded with production. Clearly the injunction creates a hardship for SAUSA, but it is not an unreasonable one in light of SAUSA's election to proceed when it was fully aware of its possible infringing conduct.[64]

Minden is not seeking retrieval of textbooks from schools.  It seeks the much more modest remedy of enjoining future printings and distribution of textbooks that infringe Minden's copyrights.  HMH cannot claim as "hardship" not being able to continue printing and selling textbooks it has long

---

[61] *See* Exhibit D hereto, HMH Motion for Partial Summary Judgment in *Wood v. Houghton Mifflin Harcourt Publishing Company, et al.*, Civil Action No. 07-CV-01516-DME-BNB (D. Colo.), pp. 8-9).
[62] *Id.*
[63] No. C 09-1223 SBA, 2009 WL 1974798 *5 (N.D. Cal. July 8, 2009).
[64] *Id.*

14

known contained infringed photographs.  Further, several courts have noted there is no "harm" where the order would "merely require Defendant to comply with the Copyright . . . Act[]."[65]  As one court held, rejecting the argument that an injunction would have a "devastating effect" on the defendant's business, "if that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone."[66]

## IV.   THE PUBLIC INTEREST WOULD BE SERVED BY A PRELIMINARY INJUNCTION.

The public interest is better served by an order enjoining future infringements than by its denial.  As a general matter, "the public interest in protecting the exclusive rights conferred upon a copyright holder will be served by issuing [equitable relief]. . ."[67]  This is not a case where the parties are competitors and the public interest in "creativity and open competition" should be considered.[68]  "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."[69]

Further, injunctive relief serves the public interest when it prevents criminal infringement under 17 U.S.C. § 506.  As a court in this district noted in 2009,

> a permanent injunction reasonably tailored to the circumstances of this litigation would serve no purpose other than to vindicate the legitimate rights of [the plaintiff] in its copyrights.  Such equitable relief would not harm the interests of the public; rather, consistent with the policies underlying copyright protection, an injunction preventing [the defendant] from continuing to commit infringing and illegal, **if not criminal**, acts under the Copyright Act . . . would ensure that the public will continue to benefit from the creative fruits of [the plaintiff's] labor.[70]

Can it ever be in the public interest to permit criminal activity to continue unabated merely because it is committed by corporate executives ensconced in upscale high-rise offices rather than by ordinary

---

[65] *Microsoft*, 2009 WL 1530040 at *8 (*citing Capitol Records v. Zahn*, No. 3:06-0212, 2007 WL 542816, at *4 (M.D. Tenn. Feb. 16, 2007)).

[66] *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254-1255 (3rd Cir.1983); *see also Mortgage Market Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, 44 (D.N.J.2008).

[67] *Designer Skin*, 2008 WL 4174882 at *6.

[68] *MDY Indus. LLC v. Blizzard Entm't, Inc.,* 616 F. Supp. 2d 958, 974 (D. Ariz. 2009).

[69] *Microsoft*, 2009 WL 1530040 at *8 (*quoting Apple Computer, Inc., v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)).

[70] *Apple Inc. v. Psystar Corp.*, 673 F.Supp.2d 943, 950 (N.D. Cal. 2009) (emphasis added).

1  street thieves down below?

2      It is not in the public's interest to require a copyright owner to bring to federal court multiple,

3  sequential copyright infringement cases against the same defendant for each batch of fresh

4  infringements that occur because injunctive relief is not ordered.

5      HMH knows how to properly license photographs for its publications.  In the future, HMH

6  should be enjoined from printing any more infringing books.  Minden should be permitted to regain

7  control of its copyrights going forward.

8  **V.   NO BOND IS REQUIRED**.

9      Minden requests that the bond be set at zero because there is effectively no cost to Defendant

10 in ceasing, in the future, infringing Minden's copyrights.  *See Conn. General Life Ins. Co. v. New*

11 *Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (A "district court has wide discretion in

12 setting the amount of a bond, and the bond amount may be zero if there is no evidence the party will

13 suffer damages from the injunction.") (internal citations omitted); *see also Doctor's Assocs., Inc. v.*

14 *Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (district court did not abuse discretion by issuing

15 preliminary injunctions without requiring moving party to post bonds where there was "no proof of

16 likelihood of harm" to the party enjoined).

17     Moreover, no bond should be required because there can be no legitimate claim to costs or

18 damages from even an erroneously issued injunction that requires nothing more than that HMH finally

19 stop infringing Minden's copyrights, as the Copyright Act requires of all who are law-abiding.  *See*

20 *Am. Fed'n & Mun. Emples.,Local 3190 v. Maricopa County Bd.*, 2007 U.S. Dist. LEXIS 18356, *58-

21 59 (D. Ariz. Mar. 13, 2007) (Because the "purpose of such a bond is to cover any costs or damages

22 suffered by the [enjoined party] arising from a wrongful injunction," the district court has discretion to

23 waive the bond requirement where the issuance of a preliminary injunction will not likely result in

24 damages to the enjoined party) (internal citations omitted).

25                                     **CONCLUSION**

26     Because granting an injunction would promote Minden's ability to enforce its copyrights, and

27 would stop HMH's future copyright infringements, and because Plaintiff satisfies all of the

28

requirements for issuance of a Preliminary Injunction permitted under 17 U.S.C. § 502, Minden respectfully requests this Court issue a Preliminary Injunction which requires Defendant to immediately stop infringing Minden's copyrights in its photographs and refrain from doing so in the future.

DATED:  October 1, 2010.

Plaintiff Minden Pictures, Inc.
by its attorneys,

s/ Christopher Seidman
Christopher Seidman
Harmon & Seidman LLC
PO Box 3207
Grand Junction, CO 81502
Telephone (970) 245-9075
Fax (970) 245-8086
Email: chris@harmonseidman.com

Alex Rice Kerr (SBN: 264821)
Harmon & Seidman LLC
219 Vicksburg Street
San Francisco, CA 94114
Telephone (415) 230-4760
Email:  alex@harmonseidman.com

PLAINTIFF'S NOTICE, MOTION AND MEMO FOR PRELIMINARY INJUNCTION                    CV 10-03212 SI

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on October 1, 2010 the foregoing **PLAINTIFF'S NOTICE AND**

3

**MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND**

4

**AUTHORITIES** was served via the CM/ECF System and by email to the counsel listed below:

5

Raoul Kennedy

6

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

7

Four Embarcadero Center, Suite 3800
San Francisco, California 94111

8

9

James Russell Jackson
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

10

russell.jackson@skadden.com
Four Times Square

11

New York, New York 10036

12

<u>s/ Alex Kerr</u><br>
Alex Kerr

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE, MOTION AND MEMO FOR PRELIMINARY INJUNCTION                    CV 10-03212 SI